UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROK ENTERTAINMENT GROUP, INC. :     No. 1:11-cv-02728 (DAB)
                                                      :
                        Plaintiff,           :
                                                      :
          -against-                          :
                                                      :
LAURENCE ALEXANDER,            :
                                                      :
                        Defendant.          :
-----------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**


                                        Andrew M. Zeitlin
                                        Shipman & Goodwin LLP
                                        Attorneys for Defendant Laurence Alexander
                                        300 Atlantic Street
                                        Stamford, Connecticut  06901
                                        (203) 324-8100


Dated: July 8, 2011

## TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................... 1

STATEMENT OF FACTS .......................................................................... 3

A.   Alexander's Employment with ROK Productions ......................................... 3
B.   The United Kingdom is the Location of all Relevant Events ........................... 4
C.   Even *Plaintiff* Has No Apparent Connection to New York ............................. 5

ARGUMENT .......................................................................................... 6

POINT I    THIS ACTION SHOULD BE DISMSSED FOR LACK OF
           PERSONAL JURISDICTION ...................................................... 6

           A.   The Complaint Fails to Allege Facts Sufficient for the Court to
                Exercise Personal Jurisdiction Over Alexander ........................... 7

           B.   The Choice-of-Law Clause Contained in the
                Employment Contract Provides an Additional Basis for Dismissal .... 9

POINT II   THIS ACTION SHOULD BE DISMSSED ON THE GROUND
           OF FORUM NON CONVENIENS .............................................. 11

           A.   Plaintiff's Choice of Forum is Entitled to Little or No
                Deference ...................................................................... 12

           B.   The United Kingdom is an Adequate and Far More
                Appropriate Forum for This Action ........................................ 14

           C.   The Private and Public Interest Factors Weigh Heavily in
                Favor of a United Kingdom Forum ........................................ 15

                i.   The Private Interest Factors Weigh Heavily In Favor
                     of a United Kingdom Forum ........................................... 15

                ii.  The Public Interest Factors Weigh Heavily in Favor of
                     a United Kingdom Forum ............................................. 18

i

POINT III   THE FIRST CLAIM IS INSUFFICIENT AS A MATTER OF
            LAW AND SHOULD THEREFORE BE DISMISSED ...................... 20

CONCLUSION.................................................................................... 22

1950767v2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROK ENTERTAINMENT GROUP, INC.  :        Case No. 1:11-cv-02728 (DAB)
                                :        ECF CASE
              Plaintiff,        :
                                :
   -against-                    :
                                :        **MEMORANDUM OF LAW**
LAURENCE ALEXANDER,             :        **IN SUPPORT OF**
                                :        **MOTION TO**
              Defendant.        :        **DISMISS COMPLAINT**
-------------------------------------------------------X

   Defendant Laurence Alexander ("Alexander") submits this memorandum of law

in support of his motion to dismiss the Complaint filed by plaintiff ROK Entertainment

Group, Inc. ("ROK Entertainment"), pursuant to Rules 12(b)(2) and 12(b)(6) of the

Federal Rules of Civil Procedure, and on the ground of *forum non conveniens*.

**Preliminary Statement**

   This action should be dismissed.  First, this Court lacks personal jurisdiction over

Alexander.  Alexander is a nonresident; is not generally present in New York; and is not

subject to New York's long-arm statute, CPLR § 302.

   Second, principles of *forum non conveniens* also require dismissal.  As set forth

in the accompanying Declarations of Laurence Alexander and Clarisse N. Thomas, Esq.,

New York has no apparent connection to this action.  Alexander worked for non-party

Rok Productions Limited ("ROK Productions"), a company registered and headquartered

in the United Kingdom.  His employment agreement with ROK Productions (the

1950767v2

"Employment Contract") was executed in the United Kingdom, and is governed by the laws of the United Kingdom, which is where Alexander worked.  The claims asserted in the Complaint do not arise from any conduct that is alleged to have taken place in New York.  The adjudication of those claims will involve the interpretation of United Kingdom law, and will require the testimony of witnesses and the production of evidence located in the United Kingdom.  Moreover, plaintiff ROK Entertainment *itself* has no apparent connection to New York.  Its principal place of business is in the United Kingdom, according to the most recent annual report it filed with the Delaware Secretary of State, and it lacks a New York address.  Under well settled principles of *forum non conveniens*, the Court should decline to exercise jurisdiction here.

Third, ROK Entertainment's first claim, for breach of contract, should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As set forth below, as a matter of United Kingdom law, plaintiff cannot enforce the Employment Contract because it was not a party to that agreement.[1]  Thus, ROK Entertainment's breach of contract claim cannot stand.

---

[1]     Under New York's choice-of-law principles, United Kingdom law applies to each of the claims asserted by plaintiff, because the United Kingdom has the greatest interest in having its law applied in this litigation.  See Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985).  Accordingly, Alexander submits herewith the Affidavit of Paul Anthony Oxnard ("Oxnard Aff."), sworn to July 6, 2011, which addresses why United Kingdom law requires dismissal of plaintiff's breach of contract claim.

2

## STATEMENT OF FACTS[2]

**A.**   <u>Alexander's Employment with ROK Productions</u>

The allegations of the Complaint center on Alexander's employment with ROK Productions.  (Compl. at ¶ 2; Employment Contract attached as Exhibit A to the Complaint at ¶ 1; Declaration of Laurence Alexander ("Alexander Decl.") at ¶ 5)  ROK Productions was a United Kingdom company with its principal place of business at Rok House, Kingswood Business Park, Holyhead Road, Albrighton, Wolverhampton, in the United Kingdom.  (Employment Contract at ¶ 1)  It was a separate corporate entity from ROK Entertainment, the plaintiff in this action.  (Affidavit of Paul Anthony Oxnard ("Oxnard Aff.") at ¶ 6)  ROK Entertainment, a Delaware corporation, is not a party to the Employment Contract.  (Employment Contract at ¶ 1; Oxnard Aff. at ¶ 7)

Alexander is a resident of Dubai, United Arab Emirates.  (Alexander Decl. at ¶ 2)  He was employed by ROK Productions as its Group Chief Executive Officer, commencing June 1, 2007.  (Employment Contract, Schedule 1)  Alexander's employment is governed by the Employment Contract, which was executed in the United Kingdom, and states:  "This contract is made within the jurisdiction of the Courts and Employment Tribunals of England and Wales and shall be governed by the law of

---

[2]   The accompanying Declarations of Laurence Alexander and Clarisse N. Thomas, as well as the Affidavit of Paul Anthony Oxnard, may properly be considered in support of this motion to dismiss on the grounds of lack of personal jurisdiction and *forum non conveniens*.  See, e.g., <u>Aguas Lenders Recovery Group v. Suez, S.A.</u>, 585 F.3d 696, 697 n.1 (2d Cir. 2009) (concerning dismissal of complaint on *forum non conveniens* grounds); <u>Mantello v. Hall</u>, 947 F. Supp. 92, 95 (S.D.N.Y. 1996) (concerning motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction).

3

England and Wales." (Employment Contract at ¶ 43; Alexander Decl. at ¶ 5)

Alexander worked for ROK Productions in the United Kingdom until he left in the latter

part of 2008, when ROK Productions stopped paying his wages and went into

administration. (Alexander Decl. at ¶ 7; Oxnard Aff. at ¶ 6)

**B.**    <u>The United Kingdom is the Location of all Relevant Events</u>

The Complaint alleges that Alexander "is an individual residing in the United

Kingdom." (Compl. at ¶ 9) In accordance with the Employment Contract, which was

executed in the United Kingdom, Alexander worked in the United Kingdom for ROK

Productions, a company that was registered and headquartered there. (Alexander Decl.

at ¶ 5; Employment Contract at ¶ 1) The Complaint is replete with allegations

concerning Alexander's work performance under the Employment Contract. (Compl. at

¶¶ 3-5, 15-17, 19) Plaintiff alleges that Alexander violated the terms of the Employment

Contract, which expressly provides that it is governed by United Kingdom law.

(Employment Contract at ¶ 43)

Conspicuously absent from the Complaint are any allegations regarding

Alexander's connection to New York. In its Complaint, ROK Entertainment instead

asserts claims pertaining to alleged misconduct that involved United Kingdom entities,

such as "Artemis UK Smaller Companies Fund" and "Artemis UK Special Situations

Fund." (Compl. at ¶ 4) In addition, the Complaint alleges misconduct arising out of

Alexander's relationship and meetings with SAB Holdings, none of which took place in

New York. (Alexander Decl. at ¶¶ 9-10, 12)

Alexander does not reside in New York; does not own real property or other assets in New York; does not have an office or place of business in New York; and does not solicit or transact business in New York. (Alexander Decl. at ¶¶ 2-4) Further, Alexander was and is not aware that the plaintiff has a place of business in New York, or that it ever conducted business in New York. (Alexander Decl. at ¶¶ 8, 13) Accordingly, he never had any expectation that any of his conduct would have consequences on plaintiff in New York. (Alexander Decl. at ¶ 13)

C.   Even *Plaintiff* Has No Apparent Connection to New York

The Complaint alleges that ROK Entertainment has its principal place of business in New York. (Compl. at ¶ 8) That allegation appears to be incorrect. Attached as Exhibit A to the accompanying Declaration of Clarisse N. Thomas ("Thomas Decl.") is a certified copy of ROK Entertainment's 2009 Annual Report, which was filed with the Secretary of State of Delaware. According to that report, which is the most recent one ROK Entertainment filed, plaintiff's principal place of business is in the *United Kingdom*. (Thomas Decl., Exh. A, p. 2) An inquiry to operator information in New York identified no New York address for plaintiff. (Thomas Decl. at ¶ 4) Plaintiff is not registered to do business in New York. (Thomas Decl. at ¶ 3)

5

ARGUMENT

POINT I

THIS ACTION SHOULD BE DISMSSED
FOR LACK OF PERSONAL JURISDICTION

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a Complaint should be dismissed if the defendant is not subject to personal jurisdiction.  "In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant. . . .  If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process. . . .  The plaintiff generally has the burden of proof in establishing personal jurisdiction over the defendant."  Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (citations omitted).

New York's long-arm statute, CPLR § 302, permits the Court to exercise personal jurisdiction over a non-domiciliary who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state . . . or
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

6

N.Y. CPLR § 302(a).

Alexander does not meet any of the criteria set forth above.  Accordingly, the Court should dismiss this action for lack of personal jurisdiction.

A.     The Complaint Fails to Allege Facts Sufficient for the
       Court to Exercise Personal Jurisdiction Over Alexander

Courts in this Circuit have routinely dismissed actions where the plaintiff was unable to sustain its burden of establishing personal jurisdiction over the defendant.  In Mareno v. Rowe, 910 F.2d 1043, 146-47 (2d Cir. 1990), for instance, the court affirmed the lower court's dismissal of an action for lack of personal jurisdiction, where the defendant conducted no business in New York, and the plaintiff failed to establish that the defendant's activities resulted in direct injury to plaintiff in New York.  In Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300, 302 (2d Cir. 1968), the court affirmed the lower court's dismissal of a complaint for lack of personal jurisdiction, after finding that the defendant "did not maintain an office, warehouse, telephone listing or bank account in New York, did not solicit orders in New York, and did not ship goods into the state."  The court there noted that New York's long arm statute "is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state."  Id. at 303.

Nanovibronix, Inc. v. Weiss, 333 F. Supp. 2d 76, 77 (E.D.N.Y. 2004), is on point.  There, the court dismissed a complaint for lack of personal jurisdiction after

concluding that the defendant's contacts with New York were virtually non-existent. Specifically, the court noted, "In addition to the facts that [defendant] lives and works in Israel, he conducts no business in the State of New York. He has sold neither products nor services, attended trade shows, advertised or otherwise solicited business in New York. [Defendant] has neither assets, property, bank accounts, employees, offices, phones, facsimile listings, nor a mailing address in the State of New York." Id. at 77-78.

As in Nanovibronix, Alexander's contacts with New York here are virtually non-existent. Indeed, the only reference to New York in the entire Complaint is in paragraphs 7 and 8, where ROK Entertainment alleges that its principal place of business is in New York.[3] Absent from the Complaint are any facts alleging or even suggesting that Alexander transacts or solicited business in New York; committed a tortious act in New York; or owns or uses real property in New York. Alexander, in fact, does not have an office or place of business in New York; does not solicit or transact business in New York; and did not have any meetings in New York relating to any of the issues raised in the Complaint. (Alexander Decl. at ¶¶ 2-4, 9-10, 12)

Further, Alexander was not aware that the plaintiff had an office in New York or was doing business in New York, and therefore had no expectation that any of his

---

[3]     That allegation, in fact, appears to be incorrect. ROK Entertainment's most recent annual report lists its principal place of business at an address in the *United Kingdom*. (Thomas Decl., Exh. A, p. 2)  Similarly, an inquiry to operator information in New York identified no New York address for plaintiff. (Thomas Decl. at ¶ 4)  Plaintiff is not registered to do business in New York. (Thomas Decl. at ¶ 3)

8

conduct would have consequences on the plaintiff in New York.  (Alexander Decl. at ¶¶ 8, 13)

In short, there is no basis to exercise jurisdiction over Alexander in New York. The Complaint should be dismissed.

**B.      The Choice-of-Law Clause Contained in the Employment Contract Provides an Additional Basis for Dismissal**

The choice-of-law clause in the Employment Contract expressly provides that it is to be governed by United Kingdom law.  (Employment Contract at ¶ 43)  The United States Supreme Court has recognized that a choice-of-law clause in a contract should not be ignored when considering whether a defendant has "purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985) (internal quotation marks omitted).

Indeed, the Second Circuit Court of Appeals has recognized that a choice-of-law clause is "a significant factor in a personal jurisdiction analysis" for that very reason. Sunward Elecs., Inc. v. McDonald, et al., 362 F.3d 17, 23 (2d Cir. 2004).  For example, in AVC Nederland B.V. v. Atrium Inv. Pshp., 740 F.2d 148 (2d Cir. 1984), the court affirmed the dismissal of a complaint that was filed in the Eastern District of New York, due in part to a choice-of-law clause contained in a partnership agreement. In that case, the partnership agreement expressly provided that it was to be governed by the laws of the Netherlands.  Id. at 155.

9

When determining whether a nonresident transacts business in New York within the meaning of CPLR § 302(a)(1), one of the factors to be considered is the choice-of-law clause in the parties' agreement.  Sunward Elecs., Inc., 362 F.3d at 22; CutCo Indus. v. Naughton, 806 F.2d 361 (2d Cir. 1986) (recognizing that choice-of-law clauses are relevant in a § 302(a)(1) analysis).  The ultimate determination of whether a defendant is subject to personal jurisdiction is based on the "totality of the circumstances."  Sunward Elecs., Inc., 362 F.3d at 23.

In this case, the totality of the circumstances mandates dismissal.  In addition to the choice-of-law clause in a contract, there are several other factors that are to be considered, including "whether the defendant has an on-going contractual relationship with a New York corporation . . . whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; . . . and . . . whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state."  Id. at 22.

As discussed more fully above, the Complaint is devoid of any facts to show that personal jurisdiction can or should be exercised over Alexander in accordance with those factors.  The Complaint should be dismissed.

## POINT II

## THIS ACTION SHOULD BE DISMSSED
## ON THE GROUND OF *FORUM NON CONVENIENS*

The present action should be dismissed on the additional ground of *forum non conveniens*, in light of the fact that ROK Entertainment's claims arise under United Kingdom law and relate to events occurring overwhelmingly in the United Kingdom.

Under the principle of *forum non conveniens*, a court may decline to exercise jurisdiction to best serve "the convenience of the parties and the court and the interest of justice," even when jurisdiction would otherwise be authorized by the general venue statute. Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 517 (S.D.N.Y. 2006), aff'd, 343 Fed. Appx. 623 (2d Cir. 2009); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). Pursuant to that doctrine, a court may refrain from hearing the case if another, more appropriate forum exists. See Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star, 899 F. Supp. 164, 167 (S.D.N.Y. 1995), aff'd, 104 F.3d 351 (2d Cir. 1996).

The *forum non conveniens* analysis proceeds in three steps. First, the Court assesses the degree of deference that should be accorded to the plaintiff's choice of forum. Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). Second, the Court determines whether an adequate alternative forum exists. Id. Third, the court weighs the private and public factors implicated in the plaintiff's choice of forum to determine whether adjudication in the alternative forum is more appropriate.

11

Id. In essence, this inquiry goes to answering the question of whether the lawsuit has a sufficient connection to the chosen forum such that the forum has a significant interest in using the court's time, and the taxpayers' money, to resolve the dispute.

Where, as here, each part of that inquiry weighs heavily in favor of dismissal, the courts of this District have repeatedly dismissed on grounds of *forum non conveniens*. See, e.g., Corporacion Tim, S.A. v. Schumacher, 418 F. Supp. 2d 529, 534 (S.D.N.Y. 2006); aff'd, 223 Fed. Appx. 37 (2d Cir. 2007) (dismissing where "the core operative facts . . . at best may have only marginal links to the plaintiff's selected forum"); Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534, 537 (S.D.N.Y. 2001), aff'd as modified, 303 F.3d 470 (2d Cir. 2002) (dismissing where "[n]either lawsuit allege[d] any injury to persons, property, or commerce in the United States," and the record established "overwhelmingly that these cases have everything to do with Ecuador and nothing to do with the United States"); Banco Metropolitano, S.A. v. Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima, 616 F. Supp. 301, 304-05 (S.D.N.Y. 1985) (granting defendant's motion to dismiss on *forum non conveniens* grounds because, among other things, the parties were all Guatemalan entities and none of the events underlying the claims occurred in New York).

A.  Plaintiff's Choice of Forum is Entitled to Little or No Deference

In the Second Circuit, "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on the degree of convenience reflected by the choice in a given case." Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146, 154

(2d Cir. 2005) (internal quotation marks omitted).  Generally, a plaintiff's choice of

forum is given more deference if it is based on convenience and a bona fide connection

to the United States, and less deference if, as in the instant case, it appears to be

motivated by forum shopping for a higher damage award, more favorable local laws, or

some other tactical advantage.  Id. at 155; Pollux Holding Ltd. v. Chase Manhattan

Bank, supra, 329 F.3d at 71.

Factors to be considered in ascertaining whether a court should favor a plaintiff's

choice of forum include "the convenience of the forum to the plaintiff's residence, the

availability of witnesses or evidence in the forum, the defendant's amenability to suit in

the forum, the availability of appropriate legal assistance, and any other reasons relating

to convenience or expense."  ICC Indus. v. Isr. Disc. Bank, Ltd., 170 Fed. Appx. 766,

768 (2d Cir. 2006).

> [W]here the circumstances indicate that the parties and material events
> bear no bona fide connection to the United States, *or that in relation to*
> *the core operative facts in dispute the parties and events at best have only*
> *marginal links to the plaintiff's chosen venue*, that choice of forum is not
> entitled to special deference . . .  Weighed in this analysis is a sliding-
> scale consideration of whether forum-shopping reasons may have served
> as a motivation in the plaintiff's chosen venue.

do Rosario Veiga v. World Meteorological Organisation, 486 F. Supp. 2d 297, 302

(S.D.N.Y. 2007) (emphasis added).

ROK Entertainment's choice of forum should be accorded little or no deference

under the circumstances here.  The Complaint fails to allege any connection to the

forum, and none is readily apparent.  Alexander's former employer, ROK Productions,

was a company that was registered and headquartered in the United Kingdom.  Virtually all of the events underlying this dispute stem from the Employment Contract, which by its express terms is to be governed by United Kingdom law, and which was executed in the United Kingdom -- where Alexander worked until his employment ended in the latter part of 2008.  ROK Entertainment's forum shopping should not be permitted by this Court, and its choice of a New York forum should be given little deference.

**B.     The United Kingdom is an Adequate and
        Far More Appropriate Forum for This Action**

An alternative forum is adequate if two criteria are satisfied: (1) the defendant is amenable to service of process there; and (2) the forum permits litigation of the subject matter of the dispute.  Pollux Holding Ltd. v. Chase Manhattan Bank, *supra*, 329 F.3d at 75.  The United Kingdom is an adequate forum because it satisfies both criteria.

Although Alexander is a resident of Dubai, there is nothing to suggest that he is not amenable to service of process in the United Kingdom, which is where he was served with process in this action.  In fact, Alexander's Declaration demonstrates the full extent of his connections with that forum.  His Employment Contract was executed in the United Kingdom; his former employer, ROK Productions, was registered and headquartered there; and he worked there in accordance with his Employment Contract from June 2007 until the latter part of 2008.

Furthermore, there is nothing in the Complaint to suggest that the United Kingdom is an inadequate forum for the purposes of this dispute.  Generally, allegations

14

of corruption or bias are considered when determining whether a foreign court is adequate.  See Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr., 311 F.3d 488, 499 (2d Cir. 2002) (recognizing that courts are reluctant to find foreign courts corrupt or biased); Turedi v. Coca-Cola Co., 343 Fed. Appx. 623, 26 (2d Cir. 2009) (same); see also Rasoulzadeh v. Associated Press, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), aff'd, 767 F.2d 908 (2d Cir. 1985) (denying a motion to dismiss on *forum non conveniens* grounds, after concluding that plaintiffs would be unable to obtain justice in the courts of Iran, and that if plaintiffs returned there to prosecute their claims, they would mostly likely be shot).  There is nothing unique about this case to suggest that the Court should find the United Kingdom court system inadequate, and the Complaint does not make any allegations to the contrary.

### C.    The Private and Public Interest Factors Weigh Heavily in Favor of a United Kingdom Forum

The third and last step of the *forum non conveniens* inquiry requires the Court to analyze the private and public interest factors as set forth in Gulf Oil Corp. v. Gilbert, *supra*, to determine which forum is best suited to adjudicate the case.  Turedi v. Coca-Cola Co., *supra*, 343 Fed. Appx. at 626.  Here, a balancing of the private and public interest factors weighs heavily in favor of dismissal of the Complaint.

#### i.    The Private Interest Factors Weigh Heavily In Favor of a United Kingdom Forum

The private interest factors concern the convenience of the parties, and include "the relative ease of access to sources of proof; availability of compulsory process for

attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. In considering these factors, "the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." Id. (internal quotation marks omitted).

In Piper Aircraft Co. v. Reyno, 454 U.S. at 257-259, the United States Supreme Court concluded that the private interest factors weighed heavily in favor of dismissal on *forum non conveniens* grounds (and in favor of the alternative forum of Scotland), because "fewer evidentiary problems would be posed" if trial was held there. The Piper court focused on the "inability to implead potential third party defendants," and the fact that a "large proportion" of the evidence was located in Great Britain. Id. The Piper court further noted that Scotland had a "very strong interest" in the litigation, as the event at issue, a plane crash, occurred there. Id. at 260.

Courts in this district have repeatedly dismissed complaints on *forum non conveniens* grounds after considering the private interest factors set forth in Gulf Oil Corp. v. Gilbert, *supra*. See, e.g., Crosstown Songs U.K., Ltd. v. Spirit Music Group, Inc., 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007) (finding that private interest factors weighed heavily in favor of litigation in the United Kingdom).

16

In <u>Giro, Inc. v. Malaysian Airline Sys. Berhad</u>, No. 10 Civ. 5550 (JGK), 2011 U.S. Dist. LEXIS 59738 at *1 (S.D.N.Y. June 3, 2001) (copy attached as Exhibit A), the District Court also found that the private interest factors weighed heavily in favor of dismissal on *forum non conveniens* grounds (and in favor of the alternative fora of the United Kingdom or Malaysia).  Although the plaintiffs in that case were United States corporations, the <u>Giro</u> court found:

> Neither party has addressed the fiscal or practical difficulties of bringing potential witnesses and documents to the United States, and more specifically to New York. However, given the circumstances, the trial would be easier, more expeditious, and less expensive if it were held in Malaysia or the United Kingdom, rather than in New York. *The defendant is located in Malaysia. The witnesses likely to have direct knowledge of whether the Agreement was breached and, if so, what damages are owed, are located primarily in Malaysia.*  Holding the trial in New York would require representatives of the defendant to travel from Malaysia to New York . . . . *There is nothing connecting the plaintiffs or this lawsuit to New York.*

<u>Id</u>. at ** 24-25 (emphasis added).

Similarly, in the present case, the private interest factors weigh heavily in favor of dismissal.  Just as in <u>Giro</u>, plaintiff's Complaint fails to allege any facts connecting this dispute to New York.  The Complaint does allege, however, that Alexander engaged in conduct that resulted in misrepresentations to several United Kingdom companies. (Compl. at ¶¶ 4, 16)  Also, the Complaint alleges that Alexander diverted a corporate opportunity to an entity, SAB Holdings, that is not even located on this continent. (Compl. at ¶ 21)

Finally, plaintiff claims that Alexander's alleged solicitation of employees resulted in at least five persons leaving plaintiff's employ to join SAB Holdings. (Compl. at ¶ 23)  Plaintiff, however, fails to allege where this conduct supposedly occurred.  As set forth in his Declaration, Alexander worked for ROK Productions in the United Kingdom, and did not have any meetings or conversations in New York with any of the plaintiff's former employees about employment opportunities with SAB Holdings. (Alexander Decl. at ¶¶ 6, 12)  Any potential witnesses with direct knowledge of the events alleged in the Complaint are therefore most likely to be located in the United Kingdom.

Litigating this action in New York, where none of the relevant events occurred, and where neither Alexander nor any of the crucial witnesses are located, would not just significantly increase the costs of litigation and the burdens associated therewith; it would make the defense of this litigation virtually impossible.  As such, the private interest factors strongly disfavor a United States forum, and this case should be litigated in the United Kingdom.  See Giro, Inc. v. Malaysian Airline Sys. Berhad, *supra*, 2011 U.S. Dist. LEXIS 59738 at **24-25.

ii.     **The Public Interest Factors Weigh Heavily in Favor of a United Kingdom Forum**

Public interest factors include "congestion in the courts, having local controversies decided locally, not imposing jury duty on people in a community that has no interest in the litigation, and avoiding the difficulty of applying foreign law." Turedi

1950767v2

v. Coca-Cola Co., *supra*, 343 Fed. Appx. at 626.  The doctrine of *forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law. . . [T]he public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'"  Piper Aircraft Co. v. Reyno, *supra*, 454 U.S. at 251 (internal quotation marks omitted).

Concerning public interest factors, of relevance to the Giro court was the fact that the dispute was "principally a breach of contract case," and the choice-of-law clause in the contract pointed toward the United Kingdom.  Giro, Inc. v. Malaysian Airline Sys. Berhad, *supra*, 2011 U.S. Dist. LEXIS 59738 at *26.  As the Giro court held, "The mere likelihood that foreign law will apply weighs in favor of dismissing the case for *forum non conveniens*."  Id.  See also Ioannides v. Marika Maritime Corp., 928 F. Supp. 374, 379 (S.D.N.Y. 1996) ("the likelihood that foreign law will apply weighs against retention of the action").

Similarly, the case before this Court is also "principally a breach of contract case."  Specifically, ROK Entertainment alleges that Alexander was bound by the Employment Contract, and that his conduct was in breach of that contract in a number of ways. (See Compl. at ¶¶ 2-3, 6, 13-15, 24)  Plaintiff's First Claim for Relief is for breach of contract.  Its Second and Third Claims for Relief, for breach of fiduciary duty and tortious interference, respectively, repeat and reallege all of the same allegations set forth in its claim for breach of contract.  (Compl. at ¶¶ 32, 36)  Further, the Employment Contract contains a choice-of-law clause that expressly provides that the

contract is to be governed by United Kingdom law.  Those factors weigh heavily in favor

of dismissal.  See Giro, Inc. v. Malaysian Airline Sys. Berhad, *supra*, 2011 U.S. Dist.

LEXIS 59738 at *26; Ioannides v. Marika Maritime Corp., *supra*, 928 F. Supp. at 379.

Finally, the United Kingdom has a "very strong interest" in this litigation, as it

involves alleged misconduct by a defendant that was working for a company within its

borders, pursuant to an employment agreement that was executed within its borders.  See

Piper Aircraft Co. v. Reyno, *supra*, 454 U.S. at 260.  As many courts in this Circuit

have found, the difficulties of applying foreign law are best avoided by leaving the

dispute to foreign courts when such courts would not be forced to apply New York law.

Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen Ag, 535 F. Supp. 2d 403,

413 (S.D.N.Y. 2008).

Given the overwhelming public interest that favors the United Kingdom as the

forum to adjudicate this case, the Court should dismiss the Complaint on *forum non*

*conveniens* grounds.

## POINT III

### THE FIRST CLAIM IS INSUFFICIENT AS A
### MATTER OF LAW AND SHOULD THEREFORE BE DISMISSED

Independent of the issues of personal jurisdiction and *forum non conveniens*, this

Court should dismiss plaintiff's First Claim, under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, for failure to state a claim under United Kingdom law.

20

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Courts have routinely dismissed claims pled under a foreign jurisdiction's law for failure to state a valid claim for relief under that law.  See, e.g., Twohy v. First Nat'l Bank, 758 F.2d 1185, 1191 (7th Cir. 1985) (affirming dismissal for failure to state claims under Spanish law).  As set forth below, ROK Entertainment's First Claim, for breach of contract, fails to state a claim under governing United Kingdom law.[4]

In support of its breach of contract claim, plaintiff has alleged that Alexander was acting "pursuant to his employment agreement *with [plaintiff].*"  (Compl. at ¶ 2) (emphasis added)  Alexander's actual employment contract, however, was with *ROK Productions*, a separate and distinct entity from plaintiff.  It was ROK Productions, not plaintiff, that employed Alexander, paying his salary and receiving the benefit of his work.

As set forth in the accompanying Affidavit of Paul Anthony Oxnard, under United Kingdom law -- specifically, the Contracts (Rights of Third Parties) Act -- a third party may enforce a term of a contract only if certain conditions have been satisfied.

---

[4]     Under Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law."  Accordingly, the Court may consider the accompanying Affidavit of Paul Anthony Oxnard, which addresses United Kingdom law.

(Oxnard Aff. at ¶ 9)  However, the Contracts (Rights of Third Parties) Act does not confer a right on a third party to enforce the terms of an employment contract.  (Oxnard Aff. at ¶ 9)  Only Alexander's former employer, non-party ROK Productions, would have the authority to enforce the terms of the Employment Contract, pursuant to the Contracts (Rights of Third Parties) Act; and ROK Productions went into liquidation in September 2009.  (Oxnard Aff. at ¶¶ 6, 9)  In short, under United Kingdom law, plaintiff has no legal right to enforce any of the terms of the Employment Contract between Alexander and ROK Productions, and "any such contractual claim by [plaintiff] must necessarily fail."  (Oxnard Aff. at ¶ 10)

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the accompanying Declarations of Laurence Alexander and Clarisse N. Thomas, Esq. and the Affidavit of Paul Anthony Oxnard, defendant Laurence Alexander respectfully requests that his motion to dismiss be granted in full, together with such other and further relief as the Court deems just and proper.

Dated: Stamford, Connecticut
         July 8, 2011

1950767v2

Respectfully submitted,

SHIPMAN & GOODWIN LLP


By:/s/ Andrew M. Zeitlin
    Andrew M. Zeitlin (AZ 0026)
    Shipman & Goodwin LLP
    300 Atlantic Street
    Stamford, Connecticut 06901
    (203) 324-8100 (tel.)
    (203) 324-8199 (fax)
    azeitlin@goodwin.com

    *Attorneys for Defendant*
    *Laurence Alexander*

1950767v2

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew M. Zeitlin
Andrew M. Zeitlin

1950767v2

# EXHIBIT A



3 of 15 DOCUMENTS

**GIRO, INC. AND WARRANTY HOUSE INTERNATIONAL, INC., Plaintiffs, - against - MALAYSIAN AIRLINE SYSTEM BERHAD, Defendant.**

**10 Civ. 5550 (JGK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2011 U.S. Dist. LEXIS 59738*

**June 2, 2011, Decided**
**June 3, 2011, Filed**

**COUNSEL:** [*1] For Giro, Inc., Warranty House International, Inc., Plaintiffs: Mark Arthur Berman, Matthew Russell Maron, LEAD ATTORNEYS, Ganfer & Shore, LLP, New York, NY; Shannon K. Davis, PRO HAC VICE, James, Potts & Wulfers, Inc, Tulsa, OK.

For Malaysian Airline System Berhad, Defendant: Shahzeb Lari, LEAD ATTORNEY, Samuel Pianko Groner, Fried, Frank, Harris, Shriver & Jacobson, New York, NY.

**JUDGES:** John G. Koeltl, United States District Judge.

**OPINION BY:** John G. Koeltl

**OPINION**

<u>**MEMORANDUM OPINION AND ORDER**</u>

    **JOHN G. KOELTL, District Judge:**

    The defendant, Malaysian Airline System Berhad ("MAS"), is a foreign corporation that entered into an agreement with the plaintiffs, Giro, Inc. and Warranty House International, Inc. (collectively "the plaintiffs" or "WHI"). WHI is a wholly owned subsidiary of Giro. The agreement provided that the plaintiffs would identify and prepare warranty claims on behalf of MAS, and that, in return, the plaintiffs would collect a fee of thirty-five percent of any recovery received by MAS as a result of the plaintiffs' work. The plaintiffs sued the defendant for breach of contract, breach of oral contract, fraud, and unjust enrichment. The defendant has brought a motion to dismiss based on improper venue [*2] pursuant to *Rule 12(b)(3) of the Federal Rules of Civil Procedure*, or in the alternative, on the grounds of forum non conveniens. Alternatively, the defendant also moves to dismiss the causes of action for oral contract, fraud, and unjust enrichment for failure to state a claim pursuant to *Rule 12(b)(6)*.

**I.**

    On a motion to dismiss, the allegations in the complaint are accepted as true. See *Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998)*; *Cohen v. Koenig, 25 F.3d 1168, 1172-73 (2d Cir. 1994)*. A court generally may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. See *Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993)*; *Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)*; *VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001)*. In particular, in deciding a motion to dismiss for improper venue, the "court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *E.P.A. ex rel. McKeown v. Port Authority, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)* [*3] (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352 (1990 & Supp. 1999)); *Burrell v. State Farm Fire & Cas. Co., No. 00 Civ. 5733, 2001 U.S. Dist. LEXIS 9680, 2001 WL 797461, at *3 (S.D.N.Y. July 12, 2001)* (stating that in deciding motion for improper venue "a court may consider facts outside the pleading" and should view facts

viewed in light most favorable to plaintiff); see also *Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).*

**II.**

The relevant facts, as alleged in the Complaint and in the affidavits and declarations submitted by the parties in connection with the current motion, are as follows.

In 2008, WHI's President, Phil King, solicited business from MAS in Malaysia. (Zaini Decl. ¶ 3.) On June 20, 2008, WHI and MAS executed a Warranty Administration Services Agreement (the "Agreement"), pursuant to which WHI was to perform "warranty and guaranty administration services" on behalf of MAS. (Compl. ¶¶ 3-4, 14; Compl. Ex. A (hereinafter "Agreement")). King executed the Agreement on behalf of WHI at WHI's offices in Oklahoma. (King Aff. ¶ 3.) Representatives of MAS signed the agreement in Malaysia. (Zaini Decl. ¶ 3.) The Agreement [*4] provided that WHI would review and identify MAS's potentially valid warranty claims, process them, and submit them to the applicable warrantors. (Compl. ¶¶ 5, 14; Agreement at 1-2, 6.) In return, WHI would receive thirty-five percent (35%) of all the recoveries MAS received as a result of WHI's work. (Compl. ¶¶ 5, 14; Agreement at 1.) MAS was required to inform WHI of all of its communications with applicable warrantors and to provide all written communications with applicable warrantors regarding the status of the claims prepared by WHI if WHI requested such information. (Compl. ¶ 15; Agreement at 1-2.) The Agreement also contained a forum selection clause, providing:

> The parties herein have mutually agreed that said warranty service contract contained herein, where applicable, shall be governed by the laws of the United Kingdom and the parties further agree that venue shall be proper under this agreement in the United Kingdom.

(Agreement at 14.)

Although WHI employees traveled to Malaysia in order to review and identify potential warranty claims, WHI asserts that the preparation of warranty claims was conducted by approximately eight employees and/or independent contractors of WHI located [*5] in Rhode Island, Indiana, Arizona, and Oklahoma. (Zaini Decl. ¶ 4; Zaini Reply Decl. ¶ 3, attached as Ex. A to Lari Decl.; King Aff. ¶¶ 4-5.) WHI identified potentially valid claims against Boeing, totaling $1,750,902, Pratt & Whitney, totaling $24,516,149.59, and Rolls-Royce, totaling $200,038,372.62. (Compl. ¶¶ 16, 19-20.) WHI also allegedly discovered that MAS was entitled to warranty/guaranty credits from Pratt & Whitney and Rolls-Royce, totaling $53,986,963. (Compl. ¶ 25.)

Boeing approved and paid to MAS $684,7519.13 of the Boeing claims, and MAS paid WHI thirty-five percent of that amount in compliance with the Agreement. (Compl. ¶¶ 17-18.) WHI submitted a portion of claims to Rolls-Royce and Pratt & Whitney directly as required by the Agreement. (Compl. ¶¶ 17-20.) Before WHI submitted the remaining claims, the Manager of Warranty Contracts at MAS, Aznita Ahmad Zaini, informed WHI that MAS would submit the remaining claims to Rolls-Royce and Pratt & Whitney, but assured WHI that WHI would receive payment for any recovery paid for the claims, and that MAS would keep WHI informed of all relevant communications. (Compl. ¶ 21.) MAS allegedly submitted the remaining claims to the offices [*6] of Pratt & Whitney and Rolls-Royce in Malaysia, and directed Pratt & Whitney and Rolls-Royce not to communicate with WHI regarding the claims. (Compl. ¶¶ 22-23; Zaini Decl. ¶ 5; See King Aff. ¶ 12.) MAS alleges that all communications between MAS and Pratt & Whitney and Rolls-Royce occurred in Malaysia. (Zaini Decl. ¶ 5.)

The plaintiffs allege, on information and belief, based in part on WHI's historical recovery rate, that MAS recovered between seventy-five and eighty percent of the claims submitted to Rolls-Royce and Pratt & Whitney, but failed to pay WHI anything for the claims. (Compl. ¶¶ 24, 31.) The plaintiffs also allege that MAS recovered all or a portion of the credits identified by WHI, but has failed to pay WHI in compliance with the Agreement. (Compl. ¶ 26.)

According to MAS, all relevant documents in MAS's possession and all MAS employees that could have information relating to this case, including the two MAS employees identified in the complaint, are located in Malaysia. (Zaini Decl. ¶¶ 7-8.) In addition, MAS contends that an agent of WHI who would possess information relevant to this dispute is a citizen of Malaysia. (Zaini Reply Decl. ¶ 4.) MAS also asserts that it was [*7] informed that its claims had been denied by employees of Pratt & Whitney and Rolls-Royce who were located in Malaysia. (Zaini Decl. ¶ 6; Zaini Reply Decl. ¶ 5.) MAS submits that the employee from Pratt & Whitney who informed it that the claims were denied was Ivan Yong, who works in Malaysia, and that the employee from Rolls-Royce who informed it that the claims were denied was Christopher Devall, who was in Malaysia but is now working in Thailand. (Zaini Reply Decl. ¶¶ 6-7.) MAS further contends that the Rolls-Royce employees who ultimately decide whether to deny a claim submitted to the Malaysia office are located in the United Kingdom. (Zaini Reply Decl. ¶ 8.)

2011 U.S. Dist. LEXIS 59738, *

The plaintiffs claim that the ultimate decision on claims submitted to the Rolls-Royce Malaysia office is made by employees located in the United Kingdom, or Virginia, and that claims submitted to the Pratt & Whitney Malaysia office are ultimately decided by employees in Pratt & Whitney's Connecticut office. (King Aff. ¶ 6.) The plaintiffs submit that approximately fourteen potential witnesses relevant to this dispute are located in the United States, while only four are located outside the United States, and that the only [*8] people with relevant information to this dispute residing in Malaysia are MAS employees. (King Aff. ¶¶ 7-8.) However, this list is plainly inflated. It includes only one identified individual, Phil King, the President of the plaintiffs, and ten unidentified "employees and/or independent contractors of WHI." (King Aff. ¶ 7.) The plaintiffs also submit that the potentially discoverable documents located outside of the United States are limited to MAS's internal notes and memoranda, and documents related to the submission of claims to Rolls-Royce if they cannot be located in the Virginia office. (King Aff. ¶ 10.)

**III.**

The defendant moves to dismiss this action for improper venue pursuant to *Rule 12(b)(3)* based on the forum selection clause in the Agreement. The plaintiffs bear the burden of showing that venue is proper for each claim against the defendant. *PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 757 (S.D.N.Y. 1995).*

The defendant claims that the forum selection clause was mandatory and provided for the United Kingdom as the only proper venue for any action arising from the Agreement. The plaintiffs respond that the clause is not mandatory, but permissive, and that venue over all [*9] claims is proper in this district under *28 U.S.C. § 1391(a)(3) and (c).*

The defendant argues that the clause is mandatory based on a standard laid out in the decision of the Tenth Circuit Court of Appeals in *Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (10th Cir. 1992).* However, this Court must look first to the law determined by the Court of Appeals for the Second Circuit. The clause is not a mandatory forum selection clause for venue under the law and standards explained by the Second Circuit Court of Appeals.

A forum selection clause is presumptively enforceable when it is mandatory, "covers the claims and parties involved in the dispute," and "was communicated to the resisting party." *S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010)* (quoting *Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007)).* If these three factors are met, the burden is on the resisting party to rebut the presumption of enforceability by

"making a sufficiently strong showing that enforcement would be unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Phillips, 494 F.3d at 383-84* (citations omitted). There is no dispute that the forum selection [*10] clause in the Agreement covers the claims and parties in this case. Nor do the plaintiffs claim that they were not properly informed of the clause. Therefore, the issue is whether the clause was mandatory with respect to venue.[1]

    1    The plaintiffs do not contend that the forum selection clause was the product of fraud or overreaching.

A forum selection clause is mandatory when it grants exclusive jurisdiction to a particular forum. In contrast, a permissive forum selection clause "only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum." *Baosteel Am., Inc. v. M/V "Ocean Lord", 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003);* see *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc., 22 F.3d 51, 52-53 (2d Cir. 1994).* A forum selection clause is mandatory "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *S.K.I. Beer Corp., 612 F.3d at 708* (internal quotation marks and citation omitted). Specific language of exclusion is not necessary to create exclusive jurisdiction. See *Baosteel, 257 F. Supp. 2d at 689.* The words of the clause [*11] must be considered in context to determine whether they simply make venue proper in a jurisdiction, or exclude venue in any other jurisdiction. See *City of New York v. Pullman, Inc., 477 F. Supp. 438, 442 n. 11 (S.D.N.Y. 1979)* (Weinfeld, J.).

Clauses using phrases such as "shall be determined" or "shall be brought" are considered mandatory. See, e.g., *Fed. Ins. Co. v. M/V "Ville D'Aquarius", No. 08 Civ. 8997, 2009 U.S. Dist. LEXIS 97349, 2009 WL 3398266, at *5 (S.D.N.Y. Oct. 20, 2009)* (finding a forum selection clause providing that any dispute "shall be determined by the English laws and any action against the Carrier shall be brought before the Court of Admiralty" mandatory, not permissive); *Indemnity Ins. Co. of N. Am. v. M/V "Easline Tianjin", Nos. 07 Civ. 959 & 07 Civ. 6008, 2008 U.S. Dist. LEXIS 10926, 2008 WL 418910, at *3 (S.D.N.Y. Feb. 14, 2008)* (finding a forum selection clause providing that any dispute "shall be determined by the court in the People's Republic of China" to be mandatory, not permissive.)

However, the word "shall" does not, by itself, create exclusive jurisdiction. The Second Circuit Court of Appeals held that the following forum selection clause was not mandatory: "Any dispute arising between the parties hereunder shall [*12] come within the jurisdiction of the

competent Greek Courts, specifically of the Thessaloniki Courts." *John Boutari, 22 F.3d at 52*. As the Court of Appeals explained, "Although the word 'shall' is a mandatory term, [as used in the clause at issue,] it mandate[d] nothing more than that the [Greek Courts] have jurisdiction." *Id. at 53* (internal quotation marks omitted.)

The use of the word "shall" in this case does not make the clause mandatory. The clause does not state that "venue shall only be proper in the United Kingdom," that actions arising under the Agreement "shall be brought in the United Kingdom," or that such actions "shall be determined in the United Kingdom." Rather, it provides that "venue shall be proper under this agreement in the United Kingdom." This language indicates that venue for a case arising under the agreement would be proper in the United Kingdom, but does not require that all cases be brought in the United Kingdom. The defendant contends that the clause cannot be permissive because such a clause would be meaningless. This is incorrect. A clause such as this ensures that a default jurisdiction exists where a case can be brought that is presumably convenient [*13] to both parties. Without such a clause, there would be no assurance that an adverse party could be sued in a mutually convenient jurisdiction. Because the clause does not create exclusive jurisdiction, it is permissive and the defendant's motion to dismiss pursuant to *Rule 12(b)(3)* must be **denied**. See, e.g., *John Boutari, 22 F.3d at 52-53* (collecting cases); *Computer Express Int'l, Ltd. & Digital Data Devices, Inc. v. Micronpc, LLC, No 01 Civ. 4801, 2001 U.S. Dist. LEXIS 22584, 2001 WL 1776162, at *5-*6 (E.D.N.Y. Dec. 21, 2001)*.

## IV.

The defendant also moves to dismiss the complaint for forum non conveniens. The defendant contends that the plaintiffs should have brought their action in Malaysia or the United Kingdom. "[T]he doctrine of forum non conveniens contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court." *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000)*. The Court of Appeals for the Second Circuit has established a three-step framework for resolving a motion to dismiss based on forum non conveniens that requires: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining [*14] whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)*. See *Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001)* (en banc), see generally *Base Metal Trading, S.A. v. Rus-*

*sian Aluminum, 253 F. Supp. 2d 681, 693-713 (S.D.N.Y. 2003)* (applying framework); see also *Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London, No. 08 Civ. 2225, 2009 U.S. Dist. LEXIS 20824, 2009 WL 667272, *2 (S.D.N.Y. Mar. 16, 2009)*. The Court applies each part of the framework in turn.

### A.

As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice of forum. See *Iragorri, 274 F.3d at 70-73*; accord *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 498 (2d Cir. 2002)*; *Base Metal Trading, 253 F. Supp. 2d at 693*. The Supreme Court in Gulf Oil generally instructed that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil, 330 U.S. at 508*. The Second Circuit Court of Appeals has interpreted Gulf Oil to mean that "a court reviewing a motion to dismiss for [*15] forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" the factors discussed below. *Iragorri, 274 F.3d at 71*.

As the Court of Appeals explained in Iragorri, the degree of deference varies depending on the circumstances. While plaintiffs who file suit in the district in which they reside are entitled to great deference, less deference is owed to foreign citizens suing in the United States. *Id. at 71*. To determine what deference should be afforded to a United States resident suing in a district other than that in which the United States resident resides, the Court of Appeals has applied a more general sliding scale. *Id. at 71-72*. The Court of Appeals has instructed that the "more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id. at 71-72*. The key to the analysis is distinguishing between a plaintiff's legitimate right to select a forum and mere forum-shopping that is designed to burden the defendants or to give the plaintiff [*16] a tactical advantage. See *id. at 72-73*. Therefore,

> the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was moti-

2011 U.S. Dist. LEXIS 59738, *

vated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . .

*Id.* at 72 (footnotes omitted); see also *F.D. Import & Export Corp. v. M/V Reefer Sun, No. 02 Civ. 2936, 2003 U.S. Dist. LEXIS 10116, 2003 WL 21396658, at *3 (S.D.N.Y. June 17, 2003)* ("In sum, courts should give greater deference to the plaintiff's chosen forum when the choice is based on legitimate factors . . . and give less deference when the plaintiff is seeking a tactical advantage that may result from peculiar conditions . . . ."); see also *Cavlam Business Ltd., 2009 U.S. Dist. LEXIS 20824, 2009 WL 667272 at *2-*3.*

Applying the sliding scale approach established by Iragorri, the plaintiffs are entitled to little deference in this case. The plaintiffs state that under *Guidi v. Inter-Cont'l Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000),* [*17] the "home forum" for an American citizen is any United States court. The plaintiffs then argue that the Court should defer to the plaintiff's choice of a United States forum compared to a foreign forum unless the balance of factors is strongly in favor of a foreign forum. However, this analysis ignores the more nuanced three step approach that the Court of Appeals directed in Iragorri should be applied to a case where a United States resident chooses to sue in a district in which the United States resident does not reside. Iragorri specifically instructs that a court should look not only to the lawsuit's bona fide connection to the United States, but also to the "forum of choice." *Iragorri, 274 F.3d at 72.* The Court of Appeals rejected an arbitrary rule whereby a United States resident's choice of forum was entitled to no deference simply because the United States resident did not sue in the resident's home district. The Court explained that a United States resident might choose to sue in a district other than the resident's home district in order to perfect jurisdiction over the defendant. "In many circumstances, it will be far more convenient for a U.S. resident to sue in a U.S. [*18] court than in a foreign country, even though it is not the district in which the plaintiff resides." *Id.* at 73. Nevertheless, the Court "must consider a plaintiff's likely motivations in light of all the relevant indications," giving "greater deference to a plaintiff's forum choice to the extent it was motivated by legitimate reasons, . . . and diminishing deference to a plaintiff's forum choice to the extent it was motivated by tactical advantage." Id.

Moreover, Guidi itself concerned the deference to be given to the choice of a United States forum by two United States widows who were suing a corporation and other individuals. The Court of Appeals distinguished that case from a lawsuit "where the plaintiff is a corpora-

tion doing business abroad and can expect to litigate in foreign courts." *Guidi, 224 F.3d at 147;* see also *Online Payment Solutions Inc. v. Svenska Handelsbanken AB, 638 F. Supp. 2d 375, 382 (S.D.N.Y. 2009)* (finding that where the plaintiff chose to establish and operate his corporation in Sweden and England, he should "not be surprised that he would need to litigate the corporation's claims in those jurisdictions"); *Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG (Erste Bank), 535 F. Supp. 2d 403, 408 (S.D.N.Y. 2008)* [*19] (finding that the plaintiff's choice of forum was not entitled to substantial deference where the plaintiff is a corporation, not an individual, and where the relevant agreement was executed in a foreign country with knowledge of how that country's business environment and law works).

In this case, the plaintiffs are Oklahoma corporations that entered into an agreement with the defendant, a Malaysian corporation. The plaintiffs solicited business from MAS in Malaysia, and did substantial work pursuant to the Agreement in Malaysia. (Zaini Reply Decl. ¶¶ 2-4; King Aff. ¶ 4.) The plaintiffs also agreed that the United Kingdom would have jurisdiction over any disputes arising from the Agreement, and that the Agreement would be governed by United Kingdom law. Thus, there is no question that the plaintiffs had an expectation of possibly litigating disputes arising from the Agreement abroad.

In addition, the lack of any connection between the plaintiffs and this district supports the proposition that, at the first step of the Iragorri analysis, the plaintiffs' choice of forum was based on impermissible forum shopping factors and not on permissible factors relating to convenience. See *Cortec Corp., 535 F. Supp. 2d at 407-408, 412-413* [*20] (considering connections to New York in evaluating a suit brought by a United States corporation located in Minnesota against foreign corporations). The plaintiffs argue that they did have a legitimate reason for bringing this lawsuit in New York, at a considerable distance from the district where they are located, namely, that the defendant could be sued here. This is a permissible consideration under Iragorri. *Iragorri, 274 F.3d at 73.* However, the force of this consideration is somewhat diminished because the plaintiffs have made no representations that MAS could not have been sued in Oklahoma under the Oklahoma long-arm statute or by other means.

No events in connection with the underlying transaction occurred in this district, and there are no arguments that any witnesses or documents are located here. Nor are the plaintiffs themselves incorporated in New York. If this case were tried in this district, all of the witnesses would be beyond the subpoena power of the Court.

Moreover, there is an additional consideration in this case which supports the proposition that impermissible tactical considerations entered into the choice of this district. If this case were brought in the plaintiffs' [*21] home forum in Oklahoma, the court would be required to follow the law in the Tenth Circuit and likely find the forum selection clause mandatory and dismiss the case on that ground. See *Milk 'N' More, Inc., 963 F.2d at 1343, 1345-46* (finding that a forum selection clause stating "that venue shall be proper under this agreement in Johnson County, Kansas" was mandatory and binding on the parties to the agreement.)

Because the plaintiffs are corporations that were on notice of possible litigation in foreign courts and there is reason to believe the plaintiffs' decision to file this action in New York was motivated, at least in part, by forum shopping rather than convenience, the plaintiffs' choice of forum is entitled to little deference.

**B.**

The second step in the Iragorri framework requires the defendant to identify an adequate alternative forum where the defendant is amenable to process. See *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)*; *Base Metal Trading, 253 F. Supp. 2d at 698*. The defendant has offered the United Kingdom and Malaysia as alternative fora. The plaintiffs offer no reason to doubt that this case could be brought in either of these alternative jurisdictions.

**C.**

Having [*22] determined that the plaintiffs' choice of forum is entitled to little deference, and having found the United Kingdom or Malaysia to be adequate alternative fora, the Court now weighs the private and public interest factors set forth by the Supreme Court in Gulf Oil. The private factors to be considered in this case are: (1) the relative ease of access to sources of proof; (2) the convenience of wiling witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive. See *Gulf Oil, 330 U.S. at 508*; accord *Aguinda v. Texaco, Inc., 303 F.3d 470, 479 (2d Cir. 2002)*. "In applying these factors, the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Monegasque, 311 F.3d at 500* (internal quotation marks omitted). In this case, the private factors weigh strongly in favor of dismissal.

The plaintiffs cannot reasonably claim that the action should be brought in the United States, or more specifically [*23] New York, for the convenience of the parties and the witnesses. It is plain that the events truly at issue in this case occurred in Malaysia, and most of the witnesses with knowledge of those events are located in Malaysia, or possibly England and Thailand. The gist of the lawsuit is that employees of the defendant were responsible for breaching the Agreement with the plaintiffs by contacting representatives of Pratt & Whitney and Rolls-Royce in Malaysia and telling them not to communicate with the plaintiffs, and by failing to pay money to the plaintiffs that the plaintiffs allege the defendant received for claims prepared by the plaintiffs. The defendant is alleged to have breached the contract by actions it took in Malaysia. The plaintiffs do not enhance their case by conjuring up ten alleged employees of the plaintiffs or independent contractors without any identification or explanation of how their testimony could be significant in this case. See *Crosstown Songs U.K. Ltd. v. Spirit Music Grp., Inc., 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007)*; *Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 487-88 (S.D.N.Y. 2006)*. Moreover, the internal deliberations of Pratt & Whitney and Rolls-Royce [*24] are not directly at issue. The central issues in this case are what MAS did in Malaysia and whether MAS was paid for claims that it submitted. Thus, the ease of access to evidence and the convenience to the parties and witnesses weigh against adjudication in the United States, and, particularly, in New York.

The lack of availability of compulsory process with respect to potential witnesses also supports dismissal. There are no identified witnesses within the subpoena power of this Court. Moreover, given the nature of the allegations, the great bulk of the witnesses would be located in Malaysia. Although the plaintiffs are United States corporations, compulsory process would not pose an issue to this case being litigated abroad because they could bring suit in the United Kingdom or Malaysia, and the great majority of witnesses whom they allege have relevant testimony are employed by or affiliated with the plaintiffs. (See King Aff. ¶ 7.)

Neither party has addressed the fiscal or practical difficulties of bringing potential witnesses and documents to the United States, and more specifically to New York. However, given the circumstances, the trial would be easier, more expeditious, and [*25] less expensive if it were held in Malaysia or the United Kingdom, rather than in New York. The defendant is located in Malaysia. The witnesses likely to have direct knowledge of whether the Agreement was breached and, if so, what damages are owed, are located primarily in Malaysia. Holding the trial in New York would require representatives of the defendant to travel from Malaysia to New York, and it would also require the plaintiffs to travel from Oklahoma to New York. There is nothing connect-

ing the plaintiffs or this lawsuit to New York. Consequently, on balance the private interest factors counsel in favor of the dismissal of the case for forum non conveniens.

Similarly, an assessment of the public interest factors also counsels in favor of dismissal for forum non conveniens. The public factors are: (1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home. See *Gulf Oil, 330 U.S. at 509*; *Aguinda, 303 F.3d at 480.*

Court congestion is not a significant factor. Although this [*26] Court could reasonably hear the case, there is no indication that courts in the United Kingdom or Malaysia would provide a less expeditious forum than this Court.

The prospect of applying foreign law weighs slightly in favor of dismissal. English law is more likely to be applied in this case than New York law, because the forum selection clause in the Agreement states "the parties herein have mutually agreed that said warranty services contract . . . shall be governed by the laws of the United Kingdom," and this is principally a breach of contract case. The mere likelihood that foreign law will apply weighs in favor of dismissing the case for forum non conveniens. See *Ioannides v. Marika Mar. Corp., 928 F. Supp. 374, 379 (S.D.N.Y. 1996)* ("While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action.") However, the likelihood that foreign law will apply tips the balance toward the United Kingdom or Malaysia only slightly, because English law is particularly amenable to application in United States courts. See *Gross v. British Broadcasting Corp., 386 F.3d 224, 233-34 (2d Cir. 2004)*;   [*27] see also *Cavlam Business Ltd., 2009 U.S. Dist. LEXIS 20824, 2009 WL 667272 at *8.*

Because there has been no jury demand in this case thus far, the third factor is irrelevant. However, if any of the parties sought a jury, the third factor would weigh in favor of dismissal. It would be unfair to impose jury duty on New York residents in this case, because this action has no connection to New York whatsoever. If the case were tried in New York, residents of this district would be called upon to find facts pertaining to a case that has no relation to their community.

The fourth and final factor weights in favor of dismissal. The United Kingdom or Malaysia has an interest in having this dispute decided in their courts. Although the parties of this case are not residents or citizens of the United Kingdom, the Agreement is governed by English law, and the primary issue is breach of contract. The defendant is incorporated in Malaysia, and the alleged breach of contract occurred in Malaysia, and thus Malaysian courts have an interest in adjudicating the dispute. Although the plaintiffs are incorporated in the United States, they have virtually no contacts with New York, and they voluntarily agreed that venue would be proper [*28] in the United Kingdom. Consequently, the public factors weigh in favor of dismissal for forum non conveniens.

In sum, courts in the United Kingdom or Malaysia are more appropriate and convenient fora for adjudicating this controversy. The parties and the lawsuit itself are not connected to New York in any material way. Malaysia is where the defendant is located, and the parties chose to apply English law to the Agreement, and agreed to suit in the United Kingdom. The suit arises out of conduct that occurred in Malaysia. Moreover, the case will likely require the application of English law, and documents and witnesses from Malaysia. For the reasons explained above, the plaintiffs' choice of forum is entitled to little deference; courts of the United Kingdom or Malaysia constitute adequate and available alternative fora; and both the private and public factors identified by the Supreme Court in Gulf Oil weigh in favor of dismissal.

Because this action should be dismissed for forum non conveniens, it is not necessary to reach the additional grounds advanced in support of dismissal.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent that they are not   [*29] dealt with above, they are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted** for forum non conveniens. The clerk is directed to enter judgment dismissing this case without prejudice and closing all pending motions.

**SO ORDERED.**

**Dated: New York, New York June 2 , 2011**

/s/ John G. Koeltl

**John G. Koeltl**

**United States District Judge**