UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ROK ENTERTAINMENT GROUP, INC., :
:
                         Plaintiff, :    Case No.: 11 CIV 2728
-against- :
:
LAURENCE ALEXANDER, :
                       Defendant. :

---

AFFIDAVIT OF
PAUL ANTHONY OXNARD

---

I, PAUL ANTHONY OXNARD, of 7 Devonshire Square, London EC2M 4YH, MAKE OATH AND SAY AS FOLLOWS:

1    I am a partner in the law firm of Squire Sanders & Dempsey (UK) LLP ("**Squire Sanders Hammonds**"), a firm created by virtue of the combination on 1 January 2011 of Squire Sanders & Dempsey LLP and Hammonds LLP. I was admitted to practice as a solicitor in England and Wales in November 1989 and I have been a partner in Hammonds LLP and now Squire Sanders Hammonds since 1997. I am currently the deputy head of the International Dispute Resolution practice group at Squire Sanders Hammonds with specific responsibility for managing the practice in Europe.

2    I make this affidavit on behalf of Mr Laurence Alexander, the Defendant in this action, at the request of his US attorneys, Shipman & Goodwin LLP based in Stamford Connecticut.

3    I have been specifically requested by Shipman & Goodwin LLP to comment, from an English law perspective, on the basis of the claim made against Mr Alexander. In doing so, save where it is obvious that I have done so, I have not investigated or sought to challenge the factual basis of the claims brought by ROK Entertainment Group, Inc

1

("**ROK**") against Mr Alexander and instead have sought to examine the merits of the claims from a purely legal perspective.

4   I exhibit to this affidavit a bundle of documents marked "PAO1" which comprises a bundle of true copies of the documents to which I shall refer in this affidavit. Document references in this affidavit are references to the page numbers of Exhibit PAO1.

5   To the extent that the matters referred to by me in the affidavit are within my own knowledge, they are true. Where such matters are not within my own knowledge, then I believe them to be true to the best of my information and belief. Insofar as the matters contained in this affidavit comprise my opinion on English law or procedure, I believe the opinions that I have expressed to be accurate and fair.

**Basis of the claim by ROK against Mr Alexander**

6   ROK's claim against Mr Alexander is based on a contract of employment dated 1 June 2007 which is attached to the complaint as Exhibit A. Section 43 of the contract of employment provides that it shall be governed by the law of England and Wales ("English law"). The contract of employment was entered into on 1 June 2007 between Mr Alexander and Rok Productions Limited. Rok Productions Limited is a separate corporate entity from ROK, the Plaintiff in the action. The precise relationship between ROK and Rok Productions Limited is somewhat unclear as the structure of the ROK group of companies is itself unclear, although at paragraph 10 of the complaint ROK is said to be the holding company of a number of operating subsidiaries which I assume at some point included Rok Productions Limited. In any event, Rok Productions Limited is now in liquidation. I refer to the company search documents at pages 1 - 4 of PAO1 which show that on 17 September 2008 Rok Productions Limited changed its name to Brenten Limited. Brenten Limited went into administration on 3 October 2008 and on 29 September 2009 it went into liquidation. In effect therefore Rok Productions Limited no longer exists.

7   ROK is not a party to the contract of employment entered into between Rok Productions Limited and Mr Alexander. Nevertheless at paragraph 25 of the complaint ROK states that it is entitled to enforce the contract of employment as *"ROK is included in the definition of the "employer" in section 42"* of the contract of employment. It is correct that section 42 of the contract of employment states that the expression "employer" in the contract shall mean Rok Productions Limited or its holding company or any subsidiary company of that holding company or any associated or affiliated company of that holding company. I am assuming for the purposes of this affidavit that ROK would be included in such a broad definition of "employer".

2

23431538/7/L

8   Notwithstanding the terms of section 42 of the contract of employment, it is my firm opinion that under English law ROK would not be entitled to enforce the terms of the contract of employment between Rok Productions Limited and Mr Alexander.

9   It is the case that under English law a person who is not a party to a contract (that is, a third party) may enforce a term of a contract if the term purports to confer a benefit on the third party. This right under English law was brought about by the enactment in 1999 of the Contracts (Rights of Third Parties) Act (pages 5 – 12 of PAO1) which altered the long-established doctrine of privity of contract by which only parties to a contract could enforce the terms of that contract. However, the Act included some exceptions to the general change in the law and at section 6(3) of the Act, it was expressly provided that the Act conferred no right on a third party to enforce any term of a contract of employment against an employee. It is the case nevertheless that depending on the way restrictive covenants in a contract of employment are drafted, the covenants can also afford protection to the legitimate business interests of someone other than just the employer (for example, a parent or holding company). However, even in those circumstances enforcement of the rights would have to be by the employer and in this case that is not possible as the employer is in liquidation.

10   It follows that under English law ROK has no right to enforce against Mr Alexander the terms of his contract with Rok Productions Limited and any such contractual claim by ROK must necessarily fail.

11   Notwithstanding my opinion on the enforceability of Mr Alexander's contract of employment by ROK, I have also been asked to express an opinion on the enforceability of the restrictive covenant against the solicitation of employees included in Mr Alexander's contract of employment at section 40, as referred to in paragraph 24 of the Complaint.

12   It is a long established principle of English law that all restraints of trade are contrary to public policy and are therefore void. The only exception to this are restrictive covenants that are designed to protect the legitimate interest of the employer and which go no further than is reasonable necessary to protect that interest[1].

13   Set against these principles, in my opinion the restrictive covenant against the solicitation of employees contained at section 40 of Mr Alexander's employment contract would almost certainly be unenforceable. Section 40 in effect contains two restrictive covenants

---

[1]   Herbert Morris v Saxelby [1916] AC 688 (HL) and Mason v Provident Clothing & Supply Co. Ltd [1913] AC 724 (HL) at pages 733 and 741.

23431538/7/L

applicable to Mr Alexander. The first is designed to prohibit the non-solicitation of his employer's clients or customers; the second is intended to prohibit the solicitation of his employer's employees. Both restrictive covenants are intended to operate during Mr Alexander's employment and for six months after the termination of his employment. The difficulty (for anyone seeking to enforce the restrictive covenants) is that they are very badly drafted. The non-solicitation of clients or customers is said to include any clients or customers of his "employer" with whom Mr Alexander had "personal dealings" during the course of his employment. The non-solicitation of employees restrictive covenant is said to relate to "any" employee of his "employer".

14   In order to asses whether restrictive covenants do more than is necessary to protect the legitimate business interest of the employer, any English court considering the enforceability of restrictive covenants would consider the range of circumstances in which the restrictive covenants might bite.

15   I have not considered the enforceability of the restrictive covenant dealing with the non-solicitation of clients and customers as it does not appear that ROK is relying on this restrictive covenant as part of its case. It has not alleged that SAB was a client or customer of ROK/Rok Productions Limited and no solicitation is alleged.

16   With regard to the non-solicitation of employees, the prohibition on Mr Alexander soliciting "any" employee of Rok Productions Limited would prohibit him, for example, soliciting a delivery boy or cleaning lady employed by Rok Productions Limited. The restriction is thus very wide.

17   Moreover, in circumstances where ROK are claiming that ROK and its subsidiaries and any of its associated or affiliated companies are included in the definition of the "employer" in section 42 of the contract of employment, then the prohibition on Mr Alexander soliciting "any" employee of his "employer" would prevent him soliciting employees who in many cases he may never have previously met or even spoken to or even known of their existence.

18   In my view an English court would conclude that the restrictive covenant relating to the non-solicitation of employees goes well beyond what is needed to protect the legitimate business interests of the employer and would therefore be unenforceable.

19   I should add that the final paragraph of section 40 does envisage a scenario by which the court could sever or modify the restrictive covenants in order to render them enforceable (this is known under English law as the "blue pencil test"). Whilst English law does permit the severance of words that render a restrictive covenant too broad, English law

does not allow the contract to be re-written[2]. In my opinion it is very difficult to see what severance of words in the restrictive covenant against the non-solicitation of employees could render it enforceable. In my view therefore the blue pencil test would not assist the employer in respect of Mr Alexander's contract.

20   Finally, I should add that although the final paragraph of section 40 states that Mr Alexander agrees that the restrictions set out in the restrictive covenants in the section are *"fair and reasonable and necessary to protect the legitimate business interests of"* Rok Productions Limited, this would not assist ROK. Ultimately, it would be up to the court to decide whether or not the restrictive covenants are enforceable and it is well established in English law that an acknowledgement by the parties that restrictive covenants are fair and reasonable has no legal effect[3].

Sworn this 6th day of July 2011


Before me,                                          }
                                                    }   P. O---
                                                    }
   [signature]                                      }
..................................................
A solicitor empowered to administer oaths
STEPHEN TALBOT, SOLICITOR 6-7-2011

**Miles & Partners LLP**
88-90 Middlesex Street
London E1 7EZ
Tel: 020 7426 0400

---

[2]   Mason v Provident Clothing and Supply Company Ltd [1913] AC 724 (HL) at page 745 and JA Mont (UK) Ltd v Mills [1993] IRLR 172.
[3]   Hinton & Higgs v Murphy and Valentine [1989] IRLR 519 and Symbian Ltd v Christensen [2001] IRLR 77.

23431538/7/L

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011, a copy of the foregoing Affidavit of Paul Anthony Oxnard was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

              /s/ Andrew M. Zeitlin
              Andrew M. Zeitlin (AZ0026)



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROK ENTERTAINMENT GROUP, INC., <br><br> Plaintiff, <br><br> -against- <br><br> LAURENCE ALEXANDER, <br><br> Defendant. | Case No.: 11 CIV 2728 |

**Exhibit PAO1**

This is the exhibit marked PAO1 referred to the affidavit sworn by Paul Anthony Oxnard this 6th day of July 2011.

Before me

*[signature]*

STEPHEN TALBOT
SOLICITOR   6.7.2011

**Miles & Partners LLP**
88-90 Middlesex Street
London E1 7EZ
Tel: 020 7426 0400

- BRENTEN LIMITED ( 05120462 )

Hammonds Compliance Report

# BRENTEN LIMITED

registered number 05120462
D-U-N-S® number 738657860

## fundamentals

### statutory

| | |
|---|---|
| previous name(s) | ROK PRODUCTIONS LIMITED until 17/09/2008 |
| registered address | 10 ORANGE STREET, HAYMARKET, LONDON, WC2H 7DQ |
| date of incorporation | 06/05/2004 |
| accounts reference date | 31/03 |
| date accounts lodged | 31/01/2008 |
| latest filed accounts | 31/03/2007 |
| date of analysed accounts | 31/03/2007 |
| type of accounts | Total Exemption Full |
| next accounts due | 01/2009 |
| latest annual return | 06/05/2008 |
| next annual return due | 05/2009 |
| issued capital | £1 |
| company status | In Liquidation |
| incorporation type | Private Limited with share capital |
| company legal form | English/Welsh companies incorporated under part 1 of the Companies Act |
| holding company | BRENTEN SERVICES LIMITED (D-U-N-S® number: 738653810) |
| ultimate holding company | none |

### directory information

| | |
|---|---|
| trading address | - |
| phone number | - |
| fax number | - |
| region | - |
| principal activities | - |
| website | - |
| sector | - |
| UK sic code(s) (1997) | 74840 - Other business activities not elsewhere classified |
| ICC activity code(s) | none |

## directors & shareholdings

### ownership

| | |
|---|---|
| holding company: | BRENTEN SERVICES LIMITED (D-U-N-S® number: 738653810) |
| domestic ultimate holding company: | - |
| global ultimate holding company: | none |

D-U-N-S® linkage

- BRENTEN LIMITED ( 05120462 )

## shareholders

date of analysed annual return: 06/05/2008

### share capital structure

| class of shares | par value (pence) | number of shares | Issued capital (£) |
|---|---|---|---|
| ORDINARY | 1 | 100 | 1 |
| total issued capital | | | 1 |

### shareholders

| shareholder name & address | class of shares | number of shares | issued capital (£) | shareholding number |
|---|---|---|---|---|
| Rok Entertainment Group Ltd<br>ROK HOUSE,<br>KINGSWOOD BUSINESS PARK,<br>HOLYHEAD ROAD,<br>ALBRIGHTON,<br>WV7 3AU | ORDINARY | 100 | 1.00 | 1 |

## directors

### BRENTEN SERVICES LIMITED

| | |
|---|---|
| name: | ROK ENTERTAINMENT GROUP LIMITED |
| disqualified director flag: | no |
| appointment date: | 06/05/2004 |
| date of birth: | 05/05/2004 |
| occupation/function: | LIMITED COMPANY |
| appointment type: | Director |
| latest updated address: | ROK HOUSE, KINGSWOOD BUSINESS PARK, HOLYHEAD ROAD, ALBRIGHTON, WOLVERHAMPTON, WV7 3AU |
| appointment address: | ROK HOUSE, KINGSWOOD BUSINESS PARK, HOLYHEAD ROAD, ALBRIGHTON, WOLVERHAMPTON, WV7 3AU |
| previous appointment address: | ROK HOUSE, KINGSWOOD BUSINESS PARK, HOLYHEAD ROAD, ALBRIGHTON, WOLVERHAMPTON, WV7 3AU |
| present appointments: | 1 |
| resignations since June 1996: | 12 |

## financials

- BRENTEN LIMITED ( 05120462 )

### financial profile

| | date of accounts | | |
|---|---|---|---|
| | 31/03/2007 | 31/03/2006 | 31/03/2005 |
| consolidated | no | no | no |
| subsidiary | no | no | no |
| number of weeks | 52 | 52 | 47 |
| currency | (£'000s) | (£'000s) | (£'000s) |
| audit qualification | unaudited accounts - not applicable | unaudited accounts - not applicable | unaudited accounts - not applicable |
| turnover | 320 | 149 | - |
| pre-tax profit | (5,657) | (5,113) | - |
| net worth | (12,115) | (7,019) | (2,361) |
| working capital | (9,659) | (5,453) | (1,387) |

Generated at: 12:43 06/07/2011
Copyright © ICC 2011 - www.icc.co.uk

3




# COMPANY INSOLVENCY INDEX

**Company Number :** 05120462
**Company Name :** BRENTEN LIMITED

**Number of Cases :** 2

To obtain details of the practitioner click on the appropriate case type description.

**Case Number :** 2 (of 2 cases)
**Case Type :** Voluntary Creditors Liquidation

**Wind Up Date :** 29/09/2009
**Appoint Practitioner :** 29/09/2009

**Case Number :** 1 (of 2 cases)
**Case Type :** In Administration

**Admin. Start Date :** 03/10/2008
**Admin. End Date :** 29/09/2009

4

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*



# Contracts (Rights of Third Parties) Act 1999

### 1999 CHAPTER 31

An Act to make provision for the enforcement of contractual terms by third parties. [11th November 1999]

Be it enacted by the Queen's most Excellent Majesty, by and with the advice and consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the authority of the same, as follows:—

Annotations:

**Extent Information**
E1 Act extends to Northern Ireland but the operation of s. 9 is limited by application as mentioned in s. 9(1)

**Commencement Information**
I1 Act in force at Royal Assent (11.11.1999): for application see s. 10(2)(3)

Annotations:

**Extent Information**
E1 Act extends to Northern Ireland but the operation of s. 9 is limited by application as mentioned in s. 9(1)

**Commencement Information**
I1 Act in force at Royal Assent (11.11.1999): for application see s. 10(2)(3)

**1      Right of third party to enforce contractual term.**

(1) Subject to the provisions of this Act, a person who is not a party to a contract (a "third party") may in his own right enforce a term of the contract if—
 (a)   the contract expressly provides that he may, or

5

Case 1:11-cv-02728-DAB Document 8 Filed 07/08/11 Page 13 of 19

2                                         *Contracts (Rights of Third Parties) Act 1999 (c. 31)*
*Document Generated: 2011-05-13*

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

    (b)   subject to subsection (2), the term purports to confer a benefit on him.

(2) Subsection (1)(b) does not apply if on a proper construction of the contract it appears that the parties did not intend the term to be enforceable by the third party.

(3) The third party must be expressly identified in the contract by name, as a member of a class or as answering a particular description but need not be in existence when the contract is entered into.

(4) This section does not confer a right on a third party to enforce a term of a contract otherwise than subject to and in accordance with any other relevant terms of the contract.

(5) For the purpose of exercising his right to enforce a term of the contract, there shall be available to the third party any remedy that would have been available to him in an action for breach of contract if he had been a party to the contract (and the rules relating to damages, injunctions, specific performance and other relief shall apply accordingly).

(6) Where a term of a contract excludes or limits liability in relation to any matter references in this Act to the third party enforcing the term shall be construed as references to his availing himself of the exclusion or limitation.

(7) In this Act, in relation to a term of a contract which is enforceable by a third party—
      "the promisor" means the party to the contract against whom the term is enforceable by the third party, and
      "the promisee" means the party to the contract by whom the term is enforceable against the promisor.

**2**     **Variation and rescission of contract.**

(1) Subject to the provisions of this section, where a third party has a right under section 1 to enforce a term of the contract, the parties to the contract may not, by agreement, rescind the contract, or vary it in such a way as to extinguish or alter his entitlement under that right, without his consent if—
    (a)   the third party has communicated his assent to the term to the promisor,
    (b)   the promisor is aware that the third party has relied on the term, or
    (c)   the promisor can reasonably be expected to have foreseen that the third party would rely on the term and the third party has in fact relied on it.

(2) The assent referred to in subsection (1)(a)—
    (a)   may be by words or conduct, and
    (b)   if sent to the promisor by post or other means, shall not be regarded as communicated to the promisor until received by him.

(3) Subsection (1) is subject to any express term of the contract under which—
    (a)   the parties to the contract may by agreement rescind or vary the contract without the consent of the third party, or
    (b)   the consent of the third party is required in circumstances specified in the contract instead of those set out in subsection (1)(a) to (c).

(4) Where the consent of a third party is required under subsection (1) or (3), the court or arbitral tribunal may, on the application of the parties to the contract, dispense with his consent if satisfied—



Case 1:11-cv-02728-DAB   Document 8   Filed 07/08/11   Page 14 of 19

*Contracts (Rights of Third Parties) Act 1999 (c. 31)* 3
Document Generated: 2011-05-13

---
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

---

(a) that his consent cannot be obtained because his whereabouts cannot reasonably be ascertained, or
(b) that he is mentally incapable of giving his consent.

(5) The court or arbitral tribunal may, on the application of the parties to a contract, dispense with any consent that may be required under subsection (1)(c) if satisfied that it cannot reasonably be ascertained whether or not the third party has in fact relied on the term.

(6) If the court or arbitral tribunal dispenses with a third party's consent, it may impose such conditions as it thinks fit, including a condition requiring the payment of compensation to the third party.

(7) The jurisdiction conferred on the court by subsections (4) to (6) is exercisable by both the High Court and a county court.

**3      Defences etc. available to promisor.**

(1) Subsections (2) to (5) apply where, in reliance on section 1, proceedings for the enforcement of a term of a contract are brought by a third party.

(2) The promisor shall have available to him by way of defence or set-off any matter that—
(a) arises from or in connection with the contract and is relevant to the term, and
(b) would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

(3) The promisor shall also have available to him by way of defence or set-off any matter if—
(a) an express term of the contract provides for it to be available to him in proceedings brought by the third party, and
(b) it would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

(4) The promisor shall also have available to him—
(a) by way of defence or set-off any matter, and
(b) by way of counterclaim any matter not arising from the contract,
that would have been available to him by way of defence or set-off or, as the case may be, by way of counterclaim against the third party if the third party had been a party to the contract.

(5) Subsections (2) and (4) are subject to any express term of the contract as to the matters that are not to be available to the promisor by way of defence, set-off or counterclaim.

(6) Where in any proceedings brought against him a third party seeks in reliance on section 1 to enforce a term of a contract (including, in particular, a term purporting to exclude or limit liability), he may not do so if he could not have done so (whether by reason of any particular circumstances relating to him or otherwise) had he been a party to the contract.

**4      Enforcement of contract by promisee.**

Section 1 does not affect any right of the promisee to enforce any term of the contract.

Case 1:11-cv-02728-DAB   Document 8   Filed 07/08/11   Page 15 of 19

4                                                                    *Contracts (Rights of Third Parties) Act 1999 (c. 31)*
                                                                                  Document Generated: 2011-05-13

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial
team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by
the team appear in the content and are referenced with annotations. (See end of Document for details)*

5      **Protection of promisor from double liability.**

Where under section 1 a term of a contract is enforceable by a third party, and the promisee has recovered from the promisor a sum in respect of—

(a)   the third party's loss in respect of the term, or
(b)   the expense to the promisee of making good to the third party the default of the promisor,

then, in any proceedings brought in reliance on that section by the third party, the court or arbitral tribunal shall reduce any award to the third party to such extent as it thinks appropriate to take account of the sum recovered by the promisee.

6      **Exceptions.**

(1) Section 1 confers no rights on a third party in the case of a contract on a bill of exchange, promissory note or other negotiable instrument.

(2) Section 1 confers no rights on a third party in the case of any contract binding on a company and its members under section 14 of the [M1]Companies Act 1985.

[F1(2A) Section 1 confers no rights on a third party in the case of any incorporation document of a limited liability partnership or any limited liability partnership agreement as defined in the Limited Liability Partnerships Regulations 2001 (S.I. No. 2001/ ).]

(3) Section 1 confers no right on a third party to enforce—

(a)   any term of a contract of employment against an employee,
(b)   any term of a worker's contract against a worker (including a home worker), or
(c)   any term of a relevant contract against an agency worker.

(4) In subsection (3)—

(a)   "contract of employment", "employee", "worker's contract", and "worker" have the meaning given by section 54 of the [M2]National Minimum Wage Act 1998,
(b)   "home worker" has the meaning given by section 35(2) of that Act,
(c)   "agency worker" has the same meaning as in section 34(1) of that Act, and
(d)   "relevant contract" means a contract entered into, in a case where section 34 of that Act applies, by the agency worker as respects work falling within subsection (1)(a) of that section.

(5) Section 1 confers no rights on a third party in the case of—

(a)   a contract for the carriage of goods by sea, or
(b)   a contract for the carriage of goods by rail or road, or for the carriage of cargo by air, which is subject to the rules of the appropriate international transport convention,

except that a third party may in reliance on that section avail himself of an exclusion or limitation of liability in such a contract.

(6) In subsection (5) "contract for the carriage of goods by sea" means a contract of carriage—

(a)   contained in or evidenced by a bill of lading, sea waybill or a corresponding electronic transaction, or
(b)   under or for the purposes of which there is given an undertaking which is contained in a ship's delivery order or a corresponding electronic transaction.



Contracts (Rights of Third Parties) Act 1999 (c. 31)  5
Document Generated: 2011-05-13

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

(7) For the purposes of subsection (6)—
    (a) "bill of lading", "sea waybill" and "ship's delivery order" have the same meaning as in the [M3]Carriage of Goods by Sea Act 1992, and
    (b) a corresponding electronic transaction is a transaction within section 1(5) of that Act which corresponds to the issue, indorsement, delivery or transfer of a bill of lading, sea waybill or ship's delivery order.

(8) In subsection (5) "the appropriate international transport convention" means—
    (a) in relation to a contract for the carriage of goods by rail, the Convention which has the force of law in the United Kingdom under section 1 of the [M4]International Transport Conventions Act 1983,
    (b) in relation to a contract for the carriage of goods by road, the Convention which has the force of law in the United Kingdom under section 1 of the [M5]Carriage of Goods by Road Act 1965, and
    (c) in relation to a contract for the carriage of cargo by air—
        (i) the Convention which has the force of law in the United Kingdom under section 1 of the [M6]Carriage by Air Act 1961, or
        (ii) the Convention which has the force of law under section 1 of the [M7]Carriage by Air (Supplementary Provisions) Act 1962, or
        (iii) either of the amended Conventions set out in Part B of Schedule 2 or 3 to the [M8]Carriage by Air Acts (Application of Provisions) Order 1967.

**Annotations:**

**Extent Information**
E2    In its application to Northern Ireland, this section has effect subject to the modifications set out in s. 9(2) (3)

**Amendments (Textual)**
F1    S. 6(2A) inserted (E.W.) (6.4.2001) by S.I. 2001/1090, reg. 9, Sch. 5 para. 20

**Marginal Citations**
M1    1985 c. 6.
M2    1998 c. 39.
M3    1992 c. 50.
M4    1983 c. 14.
M5    1965 c. 37.
M6    1961 c. 27.
M7    1962 c. 43.
M8    S.I. 1967/480.

**7    Supplementary provisions relating to third party.**

(1) Section 1 does not affect any right or remedy of a third party that exists or is available apart from this Act.

(2) Section 2(2) of the [M9]Unfair Contract Terms Act 1977 (restriction on exclusion etc. of liability for negligence) shall not apply where the negligence consists of the breach of an obligation arising from a term of a contract and the person seeking to enforce it is a third party acting in reliance on section 1.

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

(3) In sections 5 and 8 of the [M10]Limitation Act 1980 the references to an action founded on a simple contract and an action upon a specialty shall respectively include references to an action brought in reliance on section 1 relating to a simple contract and an action brought in reliance on that section relating to a specialty.

(4) A third party shall not, by virtue of section 1(5) or 3(4) or (6), be treated as a party to the contract for the purposes of any other Act (or any instrument made under any other Act).

**Annotations:**

**Extent Information**
E3    In its application to Northern Ireland, this section has effect subject to the modifications set out in s. 9(2)(3)

**Marginal Citations**
M9    1977 c. 50.
M10  1980 c. 58.

**8    Arbitration provisions.**

(1) Where—
    (a) a right under section 1 to enforce a term ("the substantive term") is subject to a term providing for the submission of disputes to arbitration ("the arbitration agreement"), and
    (b) the arbitration agreement is an agreement in writing for the purposes of Part I of the [M11]Arbitration Act 1996,

the third party shall be treated for the purposes of that Act as a party to the arbitration agreement as regards disputes between himself and the promisor relating to the enforcement of the substantive term by the third party.

(2) Where—
    (a) a third party has a right under section 1 to enforce a term providing for one or more descriptions of dispute between the third party and the promisor to be submitted to arbitration ("the arbitration agreement"),
    (b) the arbitration agreement is an agreement in writing for the purposes of Part I of the Arbitration Act 1996, and
    (c) the third party does not fall to be treated under subsection (1) as a party to the arbitration agreement,

the third party shall, if he exercises the right, be treated for the purposes of that Act as a party to the arbitration agreement in relation to the matter with respect to which the right is exercised, and be treated as having been so immediately before the exercise of the right.

**Annotations:**

**Marginal Citations**
M11  1996 c.23.

*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*

**9  Northern Ireland.**

(1) In its application to Northern Ireland, this Act has effect with the modifications specified in subsections (2) and (3).

(2) In section 6(2), for "section 14 of the [M12]Companies Act 1985" there is substituted " Article 25 of the [M13]Companies (Northern Ireland) Order 1986".

(3) In section 7, for subsection (3) there is substituted—

"(3) In Articles 4(a) and 15 of the [M14]Limitation (Northern Ireland) Order 1989, the references to an action founded on a simple contract and an action upon an instrument under seal shall respectively include references to an action brought in reliance on section 1 relating to a simple contract and an action brought in reliance on that section relating to a contract under seal.".

(4) In the [M15]Law Reform (Husband and Wife) (Northern Ireland) Act 1964, the following provisions are hereby repealed—
  (a) section 5, and
  (b) in section 6, in subsection (1)(a), the words "in the case of section 4" and "and in the case of section 5 the contracting party" and, in subsection (3), the words "or section 5".

**Annotations:**

**Extent Information**
E4  S. 9 extends to Northern Ireland but the operation of s.9 is limited by application as mentioned in s. 9(1)

**Marginal Citations**
M12  1985 c. 6.
M13  S.I. 1986/1032 (N.I. 6).
M14  S.I. 1989/1339 (N.I. 11).
M15  1964 c. 23 (N.I.).

**10  Short title, commencement and extent.**

(1) This Act may be cited as the Contracts (Rights of Third Parties) Act 1999.

(2) This Act comes into force on the day on which it is passed but, subject to subsection (3), does not apply in relation to a contract entered into before the end of the period of six months beginning with that day.

(3) The restriction in subsection (2) does not apply in relation to a contract which—
  (a) is entered into on or after the day on which this Act is passed, and
  (b) expressly provides for the application of this Act.

(4) This Act extends as follows—
  (a) section 9 extends to Northern Ireland only;
  (b) the remaining provisions extend to England and Wales and Northern Ireland only.

11

> **Changes to legislation:**
> There are outstanding changes not yet made by the legislation.gov.uk editorial team to Contracts (Rights of Third Parties) Act 1999. Any changes that have already been made by the team appear in the content and are referenced with annotations.
>
> > **Changes and effects yet to be applied to the whole Act, associated Parts and Chapters:**
> > – Act inserted by S.R. 2004/307
> > – Act omitted by S.I. 2009/1941
> > – Act text amended by S.I. 2009/1941